# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

KESLER STEVENS,          )
                                        )
      **Defendant-Below,**    )
      **Appellant**            )
                                          )
     **v.**                       )      ID. No. 1303014577
                                          )
                                          )
**STATE OF DELAWARE,**    )
                                          )
      **Plaintiff-Below,**    )
      **Appellee.**           )

Submitted: October 31, 2014
Decided: January 20, 2015

## OPINION

*Upon Appeal from the Court of Common Pleas of the State of Delaware
in and for New Castle County,*
**AFFIRMED, IN PART; DISMISSED, IN PART.**

James O. Turner, Esquire, Assistant Public Defender, Wilmington, Delaware, for Appellant, Kesler Stevens.

Christopher S. Marques, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for Appellee, the State of Delaware.

**WALLACE, J.**

## I.    INTRODUCTION

Appellant, Kesler Stevens, appeals a final judgment of conviction of Driving a Vehicle Under the Influence of Alcohol ("DUI") entered by the Court of Common Pleas.   He argues there is insufficient evidence supporting this conviction.   He had argued also that there is a flaw in the offense date in the criminal Information.   That flaw, he claimed, exposed him to a future potential double jeopardy violation.   He now seeks reversal of the trial judge's denial of his motion for judgment of acquittal on the first ground; he has abandoned the second on appeal.

Stevens was charged with DUI and other motor vehicle offenses following a late-night March 17, 2013 traffic collision.   Stevens first struck a tree, then another vehicle head-on, causing severe damage to both vehicles.   Testimony at his trial established that after the accident Stevens was walking unsteadily and stumbling, was slurring his speech, had glassy eyes, and had the odor of alcohol on his breath. The evidence further showed that Stevens – without prior request – twice handed the responding police officer his car keys.   And when police asked where he was coming from, Stevens could only respond by pointing to a street and stating its name.   Stevens and the other vehicle's occupants were ambulanced to the hospital. There the other driver saw Stevens doing wheelchair stunts in the facility's hallway.

The Information charging Stevens with DUI states the offense occurred "on or about March 18, 2013." Stevens argued that the events actually took place shortly before midnight on March 17, 2013, and that the Information is therefore flawed. This, he says, exposes him to the risk of double jeopardy.

For the reasons set forth below, the judgment of the Court of Common Pleas is **AFFIRMED**, in part, and the appeal is **DISMISSED**, in part.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In May 2013, the State filed an Information[1] charging Kesler Stevens with DUI, Failure to Have a Registration Card in Possession, and Failure to Remain Within a Single Lane.[2] According to the Information, the events giving rise to these charges occurred "on or about March 18, 2013" on Pulaski Highway in New Castle County, Delaware.

The record reflects that in the late evening hours of March 17, 2013, Stevens crashed into the car driven by Alfred Melchiore. Mr. Melchiore had just left his home and was driving with his daughter as a passenger. As they approached the intersection of Route 40 (Pulaski Highway) and Scotland Drive, Mr. Melchiore

---

[1]    *See* Ct. Com. Pl. Crim. R. 7(a) (providing that usually an offense within the jurisdiction of the Court of Common Pleas shall be prosecuted by information).

[2]    Ex. B to Appellant's Op. Br. *See* DEL. CODE ANN. tit. 21, § 4177(a)(1) (2013); § 2108; § 4122(1). Stevens was also charged with Failure to Have Insurance Identification in Possession (§ 2118(p)(1)), and Driving Vehicle at Unreasonable or Imprudent Speed (§ 4168(a)). The State entered a pre-trial *nolle prosequi* on each of these last two charges.

slowed his vehicle to approximately 5 to 10 miles per hour. Suddenly, another motorist hit the Melchiores head-on with tremendous force.

Mr. Melchiore put his vehicle in park and exited. A bystander allowed him to use her phone to call his wife. At this point, Stevens approached Mr. Melchiore, who was understandably upset and angry. Stevens told Mr. Melchiore that his (Mr. Melchiore's) daughter was crying and he (Mr. Melchiore) needed to calm her down. As Stevens stood 1 to 2 feet away from him, Mr. Melchiore could smell liquor on Stevens' breath. Mr. Melchiore described Stevens' demeanor at the accident site as "happy . . . a little flippy," and that he "just seemed like he wasn't sober."[3]

Delaware State Trooper Gregory Gaffney soon arrived at the scene. When he first got there, Stevens was sitting on the curb near his vehicle. Stevens approached Tpr. Gaffney and, without prompting, handed the trooper his car keys. Tpr. Gaffney observed that Stevens' walk seemed "unbalanced" and that Stevens "stumbled a few times."[4] Tpr. Gaffney handed the keys back to Stevens, telling Stevens that he did not need them. The trooper did ask that Stevens obtain his license and the registration and insurance information for his vehicle. Stevens returned with just his license and, once again, handed over his car keys to the

---

[3]     Ex. A to Appellant's Op. Br. at 8 (Court of Common Pleas trial transcript).

[4]     *Id.* at 24.

trooper. When Tpr. Gaffney asked Stevens where he was coming from, Stevens could only point to Pulaski Highway and reply "[t]here, Pulaski Highway."[5] Tpr. Gaffney too could smell alcohol on Stevens' breath. Stevens' speech was "slurred and mumbled" and his eyes were glassy.[6]

Stevens told Tpr. Gaffney that he thought his shoulder was starting to hurt and that he needed an ambulance to go to the hospital. Stevens, Mr. Melchiore, and Mr. Melchiore's daughter were all transported by separate ambulances to Christiana Hospital. At the hospital, Mr. Melchiore observed Stevens in a wheelchair leaning back, swerving, and doing "a wheelie type thing."[7]

During his time with the state police, Tpr. Gaffney had investigated about one DUI per month. He testified that other than asking where Stevens was traveling from, he did not, at the roadside, further investigate whether Stevens had been drinking that night. He neither asked Stevens about his drinking, nor administered any field sobriety tests. No chemical tests were conducted.

---

[5]     *Id.* at 26.

[6]     *Id.* at 25 (testifying as to odor of alcohol coming from Stevens' breath and his glassy eyes); *id.* at 31 (testifying as to Stevens' slurred speech at accident site and during a later phone conversation).

[7]     *Id.* at 18; *see also id.* at 9.

Stevens' mother arrived at the accident site and spoke with Tpr. Gaffney. He told her that Stevens was being transported to the hospital, and that Stevens may have been driving under the influence.[8]

At the accident site, Tpr. Gaffney observed tire marks crossing the grass median on Pulaski Highway. These marks continued onto the other side of the road, and pieces of a tree that had been hit were found on Stevens' vehicle's front bumper. From these observations, he concluded Stevens first hit the tree, then struck the Melchiores. The trooper also noted both vehicles' "extreme"[9] front-end damage from the head-on collision.

After his roadside investigation, Tpr. Gaffney went to Christiana Hospital to speak with the parties there. By the time he arrived at the hospital, Stevens had already left. Tpr. Gaffney called Stevens' cell phone. Stevens answered and at first told him that he was walking on an unidentified road. Later in the same conversation, Stevens said he was in a car with his mother. Tpr. Gaffney told Stevens to return to the hospital so that he could speak with him. Stevens agreed to do so, but never did. Stevens' speech was still "slurred and mumbled" during this phone conversation.[10]

---

[8]    *Id.* at 26, 39.

[9]    *Id.* at 22.

[10]    *Id.* at 31.

After waiting for Stevens at the hospital, Tpr. Gaffney drove to the address listed on Stevens' vehicle's registration and license. He tried knocking and ringing the door bell, but after 30 minutes with no response, he left. He also tried calling Stevens several more times. Stevens wouldn't answer.

At his February 2014 trial, the Court of Common Pleas found Stevens guilty of driving under the influence, failure to remain within a single lane, and failure to have registration card. Upon the close of the State's case, Stevens moved for judgment of acquittal alleging insufficient evidence on the DUI count. After the court denied the mid-trial motion for judgment of acquittal and entered its guilty verdict, Stevens renewed his motion and alternatively moved for a new trial. In this later motion, Stevens raised for the first time a claim that the Information listed "an incorrect" offense date, which, he argued, exposed him to the risk of double jeopardy. The Court of Common Pleas denied the renewed motion.[11]

Stevens was sentenced and timely appealed his conviction on the Driving Under the Influence charge.[12] He specifically appeals from the Court of Common Pleas' denial of his motion for judgment of acquittal.[13]

---

[11]    *See State v. Stevens*, 2014 WL 957548 (Del. Com. Pl. Mar. 12, 2014) (denying motion for judgment of acquittal, or alternatively, a motion for a new trial).

[12]    Notice of Appeal, *Kesler Stevens v. State of Delaware*, I.D. # 1303014577 (Del. Super. Ct. filed Apr. 14, 2014). Stevens also appealed the registration card and improper lane change charges. He now concedes, however, that this Court lacks jurisdiction to consider his appeal from these charges. *See* Appellant's Reply Br. at 7; *see also* DEL. CODE. ANN. tit 11, § 5301(c) (granting right of appeal to Superior Court from "any order, rule, decision, judgment or sentence

## III.  STANDARD OF REVIEW

This Court takes criminal appeals from the Court of Common Pleas.[14] And such appeals are "reviewed on the record," not "tried de novo."[15] In fact, this Court "functions in the same manner as the Supreme Court, in its position as an intermediate appellate court, when considering an appeal from the Court of Common Pleas."[16] An appeal from a verdict of the Court of Common Pleas, sitting without a jury, "is upon both the law and the facts." [17] The Court reviews errors of law *de novo*;[18] it reviews the trial court's factual findings to determine if

of the Court [of Common Pleas] in a criminal action . . . as provided in § 28, article IV of the Constitution of the State"); Del. Const. art. IV, § 28 (appeals to Superior Court available where the sentence includes imprisonment exceeding a month or a fine exceeding $100); *See also Reese v. State,* 2014 WL 4059213, at *1 (Del. Aug. 15, 2014) ("In cases of multiple convictions, each sentence must be evaluated individually in order to determine whether it meets the constitutional threshold.").

13      Appellant's Opening Br. 1.

14      DEL. CODE. ANN. tit 11, § 5301(c) (2013).

15      *Id.*

16      *Layne v. State*, 2006 WL 3026236, at *1 (Del. Super. Ct. Sept. 26, 2006) (citing *Dickens v. State*, 2003 WL 22172737, at *3 (Del. Super. Ct. July 11, 2003)); *see also Baker v. Connell*, 488 A.2d 1303, 1309 (Del. 1985) (Superior Court's function as intermediate appellate court is basically the same as the Supreme Court's).

17      *State v. Cagle*, 332 A.2d 140, 142 (Del. 1974).

18      *State v. Godwin*, 2007 WL 2122142, at *2 (Del. Super. Ct. July 24, 2007) (citing *Downs*, 570 A.2d at 1144).

they are "sufficiently supported by the record" and "the product of an orderly and logical deductive process."[19]

When considering on appeal the sufficiency of evidence to convict, the Court must discern "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[20] The Court considers all probative evidence, whether direct or circumstantial.[21] If the trial court's findings are sufficiently supported by the record, this Court must accept them.[22] It does not "make its own

---

[19] *Bennefield v. State*, 2006 WL 258306, at *2 (Del. Super. Ct. Jan. 4, 2006); *Cagle*, 332 A.2d at 142 ("The Superior Court has the duty to review the sufficiency of the evidence and to test the propriety of the findings below. If such findings are sufficiently supported by the record and are the product of an orderly and logical deductive process, the Superior Court must accept them."); *see also Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972) (Supreme Court reviews appeals from Superior Court trials to determine factual findings sufficiently supported by the record and the product of an orderly and logical deductive process).

[20] *Godwin*, 2007 WL 2122142, at *2. The Supreme Court reviews appeals from denials of motions for judgment of acquittal *de novo* for sufficiency of the evidence. *See Church v. State*, 2010 WL 5342963, at *1 (Del. Dec. 22, 2010) (applying sufficiency of the evidence test in reviewing appeal from Superior Court's denial of defendant's motion for judgment of acquittal); *Mercer v. State*, 2009 WL 4164765, at *2-3 (Del. Nov. 25, 2009) (defendant must move for judgment of acquittal to challenge sufficiency of the evidence, and that review is *de novo*); *Brown v. State*, 967 A.2d 1250 (Del. 2009) ("[w]hether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find [the defendant] guilty beyond a reasonable doubt of all the elements of the crime").

[21] *McKinney v. State*, 2008 WL 282285, at *3 (Del. Super. Ct. Jan. 31, 2008) (citing *Anderson v. State*, 930 A.2d 898, 901 (Del. 2007)).

[22] *State v. Cagle*, 332 A.2d 140, 142 (Del. 1974); *Tolson v. Court of Common Pleas*, 2004 WL 2419154, at *2 (Del. Super. Ct. Oct. 13, 2004) ("This Court will not disturb factual findings by the court below if they were derived logically and substantial evidence exists in the record to support such findings.") (citing *Levitt v. Bouvier,* 287 A.2d 671, 673 (Del. 1972)).

factual conclusions, weigh evidence, or make credibility determinations."[23]  Only where the record below indicates the trial court's findings are "clearly wrong" may the Court, "in justice," correct them.[24]

## IV.    THE PARTIES' CONTENTIONS

There are two issues before the Court on Stevens' appeal from the Court of Common Pleas' denial of his motion for judgment of acquittal.  First, he contends there is insufficient evidence to support his DUI conviction – given that he never told anyone he was drinking that night, and that the police never administered field sobriety or chemical tests.  Second, Stevens argues the Information is critically flawed:  it states the offenses occurred "on or about March 18, 2013" while the events at issue actually took place during the late-night hours of March 17, 2013.  This flaw, Stevens claims, is of constitutional dimension because, in his view, the Information does not protect him from double jeopardy.

The State responds that there is sufficient evidence to support the DUI conviction.  It points to evidence that Stevens inexplicably crashed head-on into another vehicle, was stumbling and unsteady, was unable to follow the officer's instructions, and had glassy eyes, slurred speech, and an odor of alcohol emanating from his breath.  This, the State argues is sufficient to support a finding that

---

[23]     *Cagle*, 332 A.2d at 142.

[24]     *Id.*

Stevens was driving while under the influence of alcohol. As to the Information, the State contends the language "on or about March 18, 2013" provided notice sufficient for Stevens to prepare his defense and sufficient to protect him from any new charging based on the same conduct.

## V. DISCUSSION

### A. Appellant's Challenge to the Information Is Waived.

It was not until after the Court of Common Pleas rendered its guilty verdict that Stevens challenged the Information in his renewed motion for judgment of acquittal. The trial court rejected this challenge in its letter opinion,[25] finding that the Information's phrase "on or about March 18, 2013" sufficiently encompasses the date the offense took place – close to midnight on March 17, 2013.[26] It further found this to be a mere clerical error causing Stevens no harm, *i.e.*, the date stated in the Information did not prejudice Stevens in preparing his defense and did not expose him to the risk of double jeopardy.[27] In turn, the trial court denied Stevens' motion for judgment of acquittal.

The Court of Common Pleas need not have reached the merits of Stevens' double jeopardy argument because it was not timely raised. Stevens concedes this

---

[25] *See State v. Stevens*, 2014 WL 957548, at *1-2 (Del. Com. Pl. Mar. 12, 2014) (denying motion for judgment of acquittal, or alternatively, a motion for a new trial).

[26] *Id.* at *1.

[27] *Id.* at *1-2.

-11-

in his supplemental appellate filing.[28] He acknowledges the defensive claim based on the alleged "flaw" in the Information could have been identified prior to trial.[29] Because he did not raise this in a pre-trial motion, Stevens acknowledges that this claim was not properly preserved for appeal and is therefore waived.[30]

Consequently, the Information flaw issue was not properly preserved for appeal, and this Court considers it waived.[31] Although this was not the basis on which the Court of Common Pleas decided the Information issue, this Court may and does nonetheless **AFFIRM** thereon.[32]

### B. There Was Sufficient Evidence for the Court of Common Pleas to Find Stevens Guilty Beyond a Reasonable Doubt.

Stevens was charged with and convicted of Driving a Vehicle Under the Influence of Alcohol in violation of title 21, Section 4177(a)(1) of the Delaware Code. Under § 4177(a)(1), "[n]o person shall drive a vehicle . . . when the person

---

[28] *See* Appellant's Supp. Mem. of Law, at 8 (acknowledging issue of flaw in Information is now waived).

[29] *Id.*

[30] *Id.* (citing Ct. Com. Pl. Crim. R. 12(b)(2) (providing defenses based on Information defects must be raised prior to trial by motion); *Brown v. State*, 729 A.2d 259, 263 (Del. 1999) (holding motion based on defect in indictment must be raised prior to trial; failure to do so does not preserve issue for appeal and results in waiver), *overruled on other grounds by Priest v. State*, 879 A.2d 575 (Del. 2005).

[31] *See* Ct. Com. Pl. Crim. R. 12(b)(2); 12(f) (providing failure to raise defenses that must be made prior to trial constitutes waiver).

[32] *Shaw v. State*, 2008 WL 1952089, at *1 n.9 (Del. May 6, 2008) (citing *Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1390 (Del. 1995) (Court may affirm for reasons different than those articulated by the trial court).

is under the influence of alcohol."[33]  The statute further defines "while under the influence" as when "the person is, because of alcohol . . . less able than the person would ordinarily have been, either mentally or physically, to exercise clear judgment, sufficient physical control, or due care in the driving of a vehicle."[34] The State has the burden to prove two elements: 1) that the defendant was driving; and 2) that the defendant was under the influence of alcohol while driving.[35] Stevens contests only the second element.

For a driving under the influence conviction under § 4177(a)(1), the State need not establish that the defendant was "drunk" or "intoxicated."[36]  Nor must it demonstrate the defendant's impairment by specific acts of unsafe driving.[37] Under Delaware law, "[a] chemical test is not necessary to prove the impairment required by the statute."[38]  What is required is evidence that the defendant was less

---

[33]     Del. Code Ann. tit 21, § 4177(a)(1) (2013).

[34]     Del. Code Ann. tit 21, § 4177(c)(10) (2013).

[35]     *Church v. State*, 2010 WL 5342963, at *2 (Del. Dec. 22, 2010).

[36]     *See Lewis v. State*, 626 A.2d 1350, 1355 (Del. 1993) (describing same "under the influence" element pre-codification); *State v. Baker*, 720 A.2d 1139, 1142 (Del. 1998) (describing element under the DUI statute); *Bennefield v. State*, 2006 WL 258306, at *3 (Del. Super. Ct. Jan. 4, 2006).

[37]     *Lewis*, 626 A.2d at 1355.

[38]     DEL. CODE ANN. tit. 21, §4177(g)(2) (2013) ("Nothing in this section shall preclude conviction of an offense defined in this Code based solely on admissible evidence other than the results of a chemical test of a person's blood, breath or urine . . ."); *Church*, 2010 WL 5342963, at *2; *Shaw v. State*, 2007 WL 866196 (Del. Jan. 25, 2007) ("Chemical testing is not required to prove impairment.").

able to properly operate a vehicle because of alcohol intake.[39] The State may meet its burden by producing circumstantial evidence of alcohol's influence through the defendant's conduct, demeanor, and statements.[40] And the State may present lay or other probative testimony to establish the defendant was under the influence of alcohol[41] as defined by Delaware's statute.

The trial court, on the record, made the following factual findings informing its verdict: on or about March 17, 2013, Stevens inexplicably caused a head-on collision with another vehicle; the other driver, Mr. Melchiore, testified that he smelled alcohol on Stevens' breath (as opposed to his clothing); Tpr. Gaffney was a certified and experienced DUI investigator; Tpr. Gaffney responded to the collision and observed tire marks in the grass leading to Stevens' vehicle; Stevens approached the trooper and, unsolicited, handed over his car keys – twice; Stevens seemed unsteady on his feet at the accident site; Stevens could not answer the trooper's question as to where he was coming from but, instead, simply pointed in the direction of Pulaski Highway; Stevens' breath smelled of alcohol, his eyes seemed glassy, and his speech was slurred; and Stevens complained of a shoulder

---

[39] *Lewis*, 626 A.2d at 1355; *see also* § 4177(c)(10).

[40] *Church*, 2010 WL 5342963, at *2.

[41] *See State v. Durrant*, 188 A.2d 526, 529 (Del. 1963) ("the sobriety of a person . . . can be determined by the direct answers of those who have seen him, and they may express their opinion in relation thereto, as intoxication may fairly be considered in the realm of common knowledge").

injury, went to the hospital, and at some point curiously left before Tpr. Gaffney could complete his investigation.[42] The trial judge derived these facts and circumstances from the trial evidence, drew reasonable inferences therefrom, and found Stevens was guilty beyond a reasonable doubt of driving under the influence. It was proper to do so.

This Court finds no error in the trial judge's denial of the motion for judgment of acquittal. Viewing the evidence in the light most favorable to the State, there is sufficient evidence to support the findings made by the trial judge, who employed an orderly and logical deductive process. The nature and circumstances surrounding the accident, and the testimony about Stevens that night – including his demeanor and behavior both at the accident site and at the hospital – clearly present sufficient probative evidence that he was under the influence of alcohol.[43] A rational trier of fact could, and did, find that Stevens was, because of alcohol, less able, either mentally or physically, to exercise clear judgment, sufficient physical control, or due care in the driving of his vehicle when he crashed head-on into the Melchiores.

---

[42] The trial judge specifically discounted Mr. Melchiore's use of the phrase "happy" in describing whether Stevens seemed sober. Ex. A to Appellant's Op. Br. at 63. The trial judge also refused to ascribe any nefarious motive to the defendant's leaving the hospital. *Id*. at 64-65.

[43] Although it arguably could, *see State v. Cagle*, 332 A.2d 140, 142 (Del. 1972), this Court need not and does not consider that which was expressly discounted by the trial judge – the testimony that Stevens seemed "happy" or the fact that he did not return to the hospital as the police investigator requested – to affirm here.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that the Information flaw issue has been waived, and that there is sufficient evidence to support Stevens' DUI conviction. The Court of Common Pleas' judgment of conviction on that charge is, therefore, **AFFIRMED.** Because the sentences for registration card and lane change violations do not meet the jurisdiction requirement, the appeal as to those convictions must be **DISMISSED** without review.[44]

**IT IS SO ORDERED.**

/s/ Paul R. Wallace
Paul R. Wallace, Judge

Original to Prothonotary

---

[44] *See Reese v. State,* 2014 WL 4059213, at \*1 (Del. Aug. 15, 2014) (Supreme Court must dismiss appeal of any individual sentence that fails to meet the constitutional threshold for appealable sentences); *Castura v. State*, 2009 WL 2365558, at \*2 (Del. July 16, 2009) (when appeal is to the Supreme Court, "each sentence [imposed] must be evaluated individually in order to determine whether it meets the constitutional threshold" and for those sentences that do not "meet the jurisdictional requirement . . . appeal as to those convictions must be dismissed without review"); *Johnson v. State*, 2008 WL 2721698, at \*1 (Del. July 14, 2008) (same for appeals to this Court from the Court of Common Pleas).

.