IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALICIA SERRANO, | § | |
| | § | |
| Defendant Below, | § | No. 36, 2020 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below— Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | Cr.A. ID. No. 1712007220 (N) |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: August 11, 2021
Decided: September 29, 2021

Before **SEITZ,** Chief Justice; **VALIHURA**, and **VAUGHN**, Justices.

**O R D E R**

This 29th day of September 2021, upon consideration of the briefs of the parties and the record of the case, it appears that:

1. The Defendant-Appellant, Alicia Serrano, appeals from a Superior Court decision affirming her Court of Common Pleas convictions for DUI, Improper Lane Change, and Improper Turn. She contends that the Court of Common Pleas erred in considering the results of the NHTSA[1] standardized field sobriety tests that were administered after she was pulled over. She argues that the horizontal gaze nystagmus test should not have been admitted because the responding officer's

---

[1] National Highway Traffic Safety Administration.

testimony failed to lay a proper foundation as required by *Zimmerman v. State*.[2]  She further argues that two other field sobriety tests should not have been admitted because it was extremely cold outside, rendering them invalid.  Additionally, she argues that the trial court's consideration of this evidence was not harmless error.

2.  On December 13, 2017, Serrano was arrested and charged with DUI, Failure to Have Insurance I.D. in Possession, Failure to Have Registration Card in Possession, Improper Lane Change, and Improper Turn.  She waived her right to a jury trial and proceeded to a bench trial in the Court of Common Pleas.  At trial, Corporal John Betsch of the Newport Police Department testified that he observed Serrano's vehicle swerve, go over the fog line, and almost strike a curb.  He followed the vehicle and observed it cross from the right lane into a middle turn lane, then swerve into the far-left lane.  It then swerved back into the middle lane and continued straight without turning.  Cpl. Betsch initiated a traffic stop of the vehicle.  Upon approaching the vehicle and speaking with Serrano from a distance of two feet, Cpl. Betsch smelled a moderate odor of alcohol coming from her mouth.  She informed the officer that she had had a grasshopper and a shot.  She did not have her insurance card or registration.  Her appearance seemed orderly, but her eyes appeared to be bloodshot, watery, and glassy, and her speech was slurred and slowed.  Further, Serrano seemed to be not sure where she was going.  At that point, Cpl. Betsch had

---

[2] 693 A.2d 311 (Del. 1997).

Serrano exit her vehicle to conduct NHTSA standardized field sobriety tests.

3. Cpl. Betsch had Serrano perform the tests on asphalt that appeared flat and even with no noticeable cracks that would hinder the tests. Cpl. Betsch had Serrano perform three tests: the horizontal gaze nystagmus ("HGN"), the walk-and-turn, and the one-leg-stand. After administering and watching Serrano fail all three tests, Cpl. Betsch testified that he knew she was impaired and was at least over a .08 blood alcohol content. He testified that when the tests were administered it was really cold outside, roughly 20 or 30 degrees, and the roads were dry. Serrano also complained that it was "cold as f***" several times and was shivering, so the officer gave her a jacket to wear.[3]

4. After Serrano failed the field sobriety tests, Cpl. Betsch took her into custody and transported her to Troop 6 where he administered an intoxilyzer test. When the State sought to admit the intoxilyzer test results into evidence at trial, Serrano objected. The court called a recess, reserved decision, and requested briefing. After that was completed, the court issued a written opinion granting Serrano's motion to exclude the intoxilyzer test results on the ground that the State failed to establish that there was an uninterrupted twenty-minute observation period prior to testing.

5. Trial resumed, and the court found Serrano guilty of DUI, Improper Lane

---

[3] App. To Appellant's Op. Br. at A29 [hereinafter A__].

3

Change, and Improper Turn. The court explained that given the three failed field sobriety tests, slurred speech, moderate odor of alcohol, and admission to drinking alcohol, coupled with all the other evidence, the State met its burden. Serrano was sentenced to a term of incarceration of 18 months, suspended after 60 days for 12 months of probation, and assessed a fine.

6. Serrano appealed to the Superior Court. She argued that without the intoxilyzer test results, there was insufficient evidence of physical impairment to support her DUI conviction beyond a reasonable doubt. The Superior Court concluded that the Court of Common Pleas' factual findings were not clearly erroneous and affirmed.

7. Serrano now appeals to this Court, requesting that we vacate her DUI conviction. She argues that the Court of Common Pleas erred by considering the field sobriety tests. Serrano first argues that the State failed to lay a proper foundation for the HGN test results as required under *Zimmerman v. State*. Second, Serrano argues that the court erred in considering the walk-and-turn test and the one-leg-stand test because they were administered outdoors in extremely cold weather and were thus invalid. Last, Serrano argues that the trial court gave great weight to the field sobriety tests and, therefore, consideration of them was not harmless error.

8. The State argues that Serrano has waived her argument that the trial court erred in admitting the HGN test results into evidence because it was not fairly presented in her appeal to the Superior Court. The State further argues that there

4

was sufficient evidence for the trial court to convict Serrano of DUI and the trial judge was in the best position to assess the evidentiary weight afforded to the test results.

9. If a claim was not presented in an appeal from the Court of Common Pleas to the Superior Court, it is waived.[4] In Serrano's appeal to the Superior Court, she made no mention whatsoever that a proper foundation to admit the HGN test evidence under *Zimmerman v. State* was required, nor did she assert that the proper foundation was not laid. Therefore, to the extent that Serrano argues that the HGN test was inadmissible due to lack of proper foundation, the argument is waived. We will consider her argument against admissibility of the walk-and-turn test and the one-leg-stand test.

10. "This Court's review of the Court of Common Pleas' decision mirrors that of the Superior Court."[5] "We independently review the Court of Common Pleas' determination for 'whether there is legal error, whether the trial court's factual findings are sufficiently supported by the record, and whether those findings are the product of an orderly and logical reasoning process.'"[6] "We review *de novo* the Court of Common Pleas' formulation and application of legal principles[.]"[7] We

---

[4] *Onkeo v. State*, 2008 WL 3906076, at *1, n.3 (Del. Aug. 26, 2008) (TABLE) (citing Supr. Ct. R. 8).
[5] *Anderson v. State*, 21 A.3d 52, 57 (Del. 2011) (citing *Hicklin v. Onyx Acceptance Corp.*, 970 A.2d 244, 248 (Del. 2009)).
[6] *Id.* (quoting *Hicklin*, 970 A.2d at 248).
[7] *Id.* (citing *Reddy v. MBKS Co., Ltd.*, 945 A.2d 1080, 1085 (Del. 2008)).

"will not overturn the trial court's factual findings unless those findings are 'clearly wrong.'"[8]

11. Serrano's argument that the walk-and-turn and one-leg-stand tests should not have been administered outdoors because it was cold outside is unavailing. She relies on language in the 2002 edition to the NHTSA Instructor Guide on Standardized Field Sobriety Testing. The same exact language is used in the 2015 edition:

> The procedures outlined in this manual describe how the Standardized Field Sobriety Tests (SFSTs) are to be administered under ideal conditions. We recognize that the SFST's will not always be administered under ideal conditions in the field, because such conditions do not always exist. Even when administered under less than ideal conditions, they will generally serve as valid and useful indicators of impairment. Slight variations from the ideal, i.e., the inability to find a perfectly smooth surface at roadside, may have some effect on the evidentiary weight given to the results. However, this does not necessarily make the SFSTs invalid.[9]

12. Serrano argues that "[t]he weather conditions for the Walk and Turn test and One Leg Stand test were a far cry from being ideal."[10] However, Cpl. Betsch simply testified that it was really cold outside, roughly 20 or 30 degrees, and it was dry. Further, after hearing Serrano's complaints about the temperature and seeing her shiver, Cpl. Betsch retrieved a jacket for Serrano to wear. We fail to see how it

---

[8] *Id*. (citing *State v. Cagle*, 332 A.2d 140, 143 (Del. 1974)).
[9] Appendix to Appellee's Ans. Br. at B21.
[10] A17.

being cold outside, without more, would render the tests invalid. Serrano's argument goes to the weight to be given the evidence, not its admissibility.

13. Serrano also relies on a Court of Common Pleas decision, *State v. Mulholland*.[11] In that case, the court stated that "[t]he field test in this case was administered under extremely cold conditions with **snow** on the roadway. Thus, the Court finds that the results of **two** field tests are unreliable indicators of intoxication due to the manner in which they were conducted."[12] The court did not consider the HGN and walk-and-turn test but still considered the one-leg-stand test.

14. In this case, there was not snow on the ground. It was a dry night. The asphalt where the tests were administered was a smooth surface. The court in *Mulholland* placed emphasis on the fact that there was snow on the roadway. In that case, there were also several issues concerning the way that the tests were administered. The presence of snow on the ground distinguishes *Mulholland* from this case.

15. The Court of Common Pleas did not err in finding that there was sufficient evidence to convict Serrano of DUI. Under 21 *Del. C.* § 4177(a)(1), no person shall drive a vehicle when under the influence of alcohol. Section 4177(c)(11) states "'[w]hile under the influence' shall mean that the person is, because of alcohol or drugs or a combination of both, less able than the person would ordinarily have been,

---

[11] 2013 WL 3131642 (Del. Com. Pl. Jun. 14, 2013).
[12] *Id.*, at *6 (emphasis in original).

either mentally or physically, to exercise clear judgment, sufficient physical control, or due care in the driving of a vehicle."[13]

16. To prove that Serrano was guilty of DUI, the State was required to " prove that [Serrano] was driving and that [s]he was under the influence of alcohol while driving."[14]  A chemical test is not required to prove impairment.[15]  DUI may be established by circumstantial evidence.[16]

17. In this case, there was sufficient evidence to find Serrano guilty of DUI. Serrano committed the other traffic violations, had a moderate odor of alcohol coming from her breath, had bloodshot, watery, and glassy eyes, had slowed and slurred speech, admitted to consuming alcohol, was confused about where she was, and failed all three field sobriety tests.

NOW, THEREFORE, IT IS THE ORDER of the Court that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

---

[13] 11 *Del. C.* § 4177(c)(11).

[14] *Church v. State*, 2010 WL 5342963, at *2 (Del. Dec. 22, 2010) (TABLE) (citing *Lewis v. State*, 626 A.2d 1350, 1355 (Del. 1993)).

[15] *Shaw v. State*, 2007 WL 866196, at *2 (Del. Mar. 23, 2007) (TABLE) (citing 21 *Del. C.* § 4177(g)(2)).

[16] *Church*, 2010 WL 5342963, at *2 (citing *State v. Pritchett*, 173 A.2d 886, 889 (Del. Super. 1961)).