# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MILES J. RUSSELL,               )
                                )
                    Plaintiff,  )
                                )
          v.                    )    C.A. No. N19C-06-112 SPL
                                )
MICHELLE CONDO,                 )
KENNETH MCALLISTER, and         )
DAVID RENNEISEN,                )
                                )
                    Defendants. )
                                )
and                             )
                                )
KENNETH McALLISTER,             )
VANESSA COWAN McALLISTER,       )
Individually and as p/n/g of    )
C. Cowan and V.C. McAllister, III, )
                                )
                    Plaintiffs, )
                                )
          v.                    )
                                )
MILES J. RUSSELL,               )
MICHELLE CONDO, and             )
DAVID RENNEISEN,                )
                                )
                    Defendants, )
                                )

*Upon Plaintiff/Counterclaim Defendant Kenneth McAllister's
Motions for a New Trial or, in the Alternative, for Judgment as a Matter of Law,*
**DENIED**

**ORDER**

This 25th day of January 2024, upon consideration of Plaintiff/Counterclaim Defendant Kenneth McAllister's ("McAllister") Motions for a New Trial or, in the Alternative, for Judgment as a Matter of Law,[1] and Defendant Michelle Condo's ("Condo") opposition, it appears to the Court that:

1.     On July 1, 2017, Miles Russell ("Russell"), David Renneisen ("Renneisen"), McAllister, and Condo were involved in a four-vehicle chain collision on southbound Route 1 in Odessa, Delaware.[2]  On June 12, 2019, Russell filed a complaint against Renneisen, McAllister, and Condo alleging the collision occurred as the proximate result of their negligence and, as a result, Russell sustained injury.[3]  Russell alleged that, on July 1, 2017:

> [He] was traveling southbound [on Route 1]in the left lane slowing down for traffic when his vehicle was struck in the rear by a vehicle operated by Defendant Renneisen, who was slowing down for traffic and was struck in the rear by a motor vehicle operated by Defendant McAllister who was slowing down for traffic when he was stuck in the rear by a motor vehicle operated by Defendant Condo who observed

---

[1] D.I. 96, 97. D.I. __ references are to the docket in C.A. No. N19C-06-112. McAllister is both plaintiff and counterclaim defendant in this case.  He has maintained different counsel for each of these roles.  Each counsel filed a Motion for a New Trial or, in the Alternative, for Judgement as a Matter of law.  (D.I. 97 as plaintiff; D.I. 96 as counterclaim defendant).  This Order addresses both motions.

[2] D.I. 1 at 2, ¶8.

[3] D.I. 1.

the vehicles in front of her slowing down quickly and she swerved to the right and struck Defendant McAllister's vehicle in the rear.[4]

2.      On October 2, 2020, McAllister, together with his wife and children, filed a complaint against Russell, Renneisen, and Condo alleging the collision occurred as a proximate result of their negligence and, as a result, McAllister and his wife and children sustained injury.[5]  McAllister alleged:

> That on July 1, 2017, [on Route 1 southbound], the vehicle owned and operated by Defendant Michelle Condo came into contact with the motor vehicle operated by Plaintiff Kenneth McAllister, causing the vehicle operated by Kenneth McAllister to come into contact with the motor vehicle being driven by Defendant David Renneisen, whose vehicle came into contact with the vehicle being driven by Defendant Miles J. Russell.[6]

3.      Condo answered Russell's complaint and crossclaimed against co-defendants McAllister and Renneisen on January 19, 2019,[7] and, on December 3, 2020, Condo answered McAllister's complaint and counterclaimed for contribution and/or indemnification.[8]  On January 15, 2021, the Court consolidated the two

---

[4] D.I. 1 at 2, ¶ 8.

[5] D.I.(20) at 1.  McAllister's complaint, filed under C.A. No. N20C-10-029 WCC, was consolidated with C.A. No. N19C-06-112 SPL.  Docket items in C.A. No. N20C-10-029 WCC filed before consolidation are referenced as D.I. (20) at __.

[6] D.I.(20) 1 at ¶ 15.

[7] D.I. 5.

[8] D.I. (20) at 8.

cases.[9] On July 31, 2023, the Court denied motions for summary judgment and the consolidated case moved toward trial.[10]

4.     The Court convened a pretrial conference on August 17, 2023.[11] Counsel for McAllister and Condo appeared for the conference and informed the Court that the claims related to Russell and Renneisen had been resolved and that those individuals would not be participating as parties in the litigation. McAllister's counsel informed the Court that the witnesses required to substantiate damages were unavailable for the scheduled September trial. With counsels' agreement, the Court bifurcated the liability and damages components of the case and set a trial on liability for September 2023.[12] The September trial was rescheduled to December 2023, and trial commenced on December 5, 2023.[13]

5.     From the outset, the parties litigated this case as a chain vehicle collision and focused on the order and timing of each strike. McAllister, in his complaint and at trial, sought to assign responsibility for the crash to Russell, Renneisen, and Condo. Thus, the jury instructions and special verdict sheet allowed for findings of relative responsibility of the four drivers. On December 8, 2023, the

---

[9] D.I. (20) at 10; D.I. 15.

[10] D.I. 79.

[11] D.I. 83.

[12] *Id.*

[13] D.I. 86.

jury found Condo 30% responsible for the accident, McAllister 70% responsible for the accident, and Russell and Renneisen not responsible.[14] The parties informed the Court that the case would return to mediation to resolve damages.[15]

6.  McAllister, both as plaintiff and as defendant, has moved for (1) a new trial under Superior Court Civil Rule 59, or (2) judgment as a matter of law under Superior Court Civil Rule 50.[16] Having reviewed the arguments, the Court concludes that McAllister's motions should be denied.

7.  "At the close of the evidence, if a party moves for judgment as a matter of law under Superior Court Civil Rule 50(a), and the Court does not grant the motion, that party may renew its motion after the trial by filing a motion for judgment notwithstanding the verdict ("JNOV") under Superior Court Civil Rule 50(b)."[17] When such a motion is made after trial, the "trial judge does not weigh the evidence."[18] Rather, the Court must view the evidence in the light most favorable to the non-moving party and determine "whether the evidence and all reasonable

---

[14] D.I. 101.

[15] D.I. 93.

[16] D.I. 96, 97.

[17] *Envolve Pharmacy Sols., Inc. v. Rite Aid Hdqtrs. Corp.*, 2023 WL 5604201, at *3 (Del. Super. Ct. Aug. 30, 2023).

[18] *Id.* (quoting *Deardoff Assocs., Inc. v. Paul*, 2000 WL 1211130, at *2 (Del. Super. Ct. Apr. 27, 2000) (cleaned up)).

inferences that can be drawn therefrom could justify" the jury's verdict.[19] "To find for the moving party, the Court must determine 'there is no legally sufficient evidentiary basis for a jury to [have found] for the non-movant.'"[20]

8.  Under Superior Court Civil Rule 59, a new trial may be granted for "any of the reasons for which new trials have . . . been granted in the Superior Court."[21] The jury's verdict is presumed to be correct.[22] The Superior Court gives "enormous deference" to the jury's verdict and to the jury's role as the ultimate finders of fact.[23] "The Court should not set aside a jury's verdict unless: (1) 'it contradicts the great weight of the evidence'; (2) the 'jury disregarded the applicable rules of law'; or (3) 'the jury's verdict is tainted by legal error committed by the trial court before or during the trial.'"[24]

9.  McAllister, as plaintiff and as counterclaim defendant, argues that this Court erred in instructing the jury and, thus, a new trial is warranted. "[A] party is

---

[19] *Envolve Pharmacy Sols., Inc.,* 2023 WL 5604201, at *3 (quoting *Chamberlain v. Pyle*, 2023 WL 1771013, at *2 (Del. Super. Ct. Feb 6, 2023) (cleaned up)).

[20] *Envolve Pharmacy Sols., Inc.,* 2023 WL 5604201, at *3 (quoting *Mumford v. Paris*, 2003 WL 231611, at *2 (Del. Super. Ct. Jan. 1, 2023) (cleaned up)).

[21] *Envolve Pharmacy Sols., Inc.,* 2023 WL 5604201, at *4 (cleaned up).

[22] *Id.*

[23] *Id.*

[24] *Id.* (quoting *O'Reilly v. Rogers,* 69 A.3d 1007, 1010 (Del. 2013)).

not entitled to a particular jury instruction,"[25] rather, when instructing a jury, the Court must "give a correct statement of the substance of the law and be reasonably informative and not misleading when read as a whole."[26] As framed in McAllister's complaint and further developed at trial, this case centered on the progression of a chain reaction collision on Route 1. And, as alleged by McAllister, four drivers potentially played a role in this collision. The instructions provided the jury a correct statement of the law and enabled them to parse liability for each driver. McAllister now argues "the undisputed evidence shows that Defendant Condo's actions or inactions were the cause of Condo's vehicle striking the McAllister vehicle" and "[that] Defendant Condo is 100% responsible [for] striking the McAllister vehicle."[27] But this argument fails to account for the full chain of events McAllister established at trial. The Court does not find that the instructions failed to correctly inform the jury on the law.

10. Further, as counterclaim defendant, McAllister contends that the Court limited his ability to defend himself[28] and allowed Condo's counsel to present

---

[25] *Culver v. Bennett*, 588 A.3d 1094, 1096 (Del. 1991).

[26] *Express Scripts, Inc. v. Bracket Holdings Corp.,* 248 A.3d 824, 829 (Del. 2021) (quoting *Chrysler Corp. (Del.) v. Chaplake Hldgs., Ltd.,* 822 A.2d 1024, 1034 (Del. 2003) (cleaned up)).

[27] D.I. 96 at ¶ 14.

[28] *Id.* at ¶ 21.

improper argument to the jury.[29] These claims, too, are without merit and do not warrant a new trial or entry of judgment as a matter of law.

11. Delaware Uniform Rule of Evidence 611(a) instructs the Court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."[30] "It is well settled that a trial judge is responsible for management of the trial and is vested with broad discretion to perform that function."[31] Here, Condo enlisted one attorney to defend against McAllister's complaint and to assert her counterclaim and crossclaim. McAllister, on the other hand, retained separate counsel as plaintiff and as counterclaim defendant. Initially, the Court informed the parties of its expectation of "one opening and one closing per party and one attorney per party questioning (examination or cross examination) each witness" because there did not appear to be "a conflict or divergent interests that would require questioning of a witness by more than one attorney."[32] After hearing from McAllister's counsel at the pretrial conference, the Court permitted McAllister's

---

[29] *Id.* at ¶ 28.

[30] D.R.E. 611(a).

[31] *Christiana Care Health Services, Inc. v. Crist,* 856 A.2d 622, 625-26 (Del. 2008) (quoting *Czech v. State*, 945 A.2d 1088, 1095 (Del. 2008)).

[32] D.I. 91.

attorneys flexibility in presenting and arguing their respective positions.[33] In short, both attorneys were permitted to participate to the extent that neither wasted judicial resources or badgered witnesses. Throughout the trial, McAllister's attorney representing him as counterclaim defendant was afforded wide latitude in examining witnesses. McAllister offers nothing to persuade the Court that it abused its discretion in its application of Delaware Uniform Rule of Evidence 611 to manage this trial.

12. Similarly, a trial court is afforded discretion in addressing objections during closing argument.[34] As trial neared conclusion, the parties sought guidance from the Court on the scope of permissible argument based on photographs depicting damage to the various vehicles involved in this collision. This request, deemed by the Court a motion *in limine* by plaintiff, compelled a review of the Delaware Supreme Court's decision in *Davis v. Maute*.[35] *Davis* instructs that counsel may not argue that there is a correlation between the extent of the damage to automobiles in an accident and the extent of the occupants' personal injuries caused by the accident in the absence of expert testimony on the issue. The *Maute* Court found this analysis to apply equally to argument on liability, noting that "[i]f a party intends to make an

---

[33] D.I. 92.

[34] *Crosby v. State*, 108 A.3d 291, 292 (Del. 2015).

[35] 770 A.2d 36 (2001).

argument involving an issue that is 'within the knowledge of experts only and not within the common knowledge of laymen,' the party must present competent expert testimony to support that argument."[36]   Because neither party offered expert testimony, the Court instructed Counsel not to argue that the damage to the vehicle evidences the force with which any of the two vehicles came together, and, that if such an argument is made and an objection lodged, the Court will instruct the jury that "there is no relationship between the magnitude of the damage to a particular car and the velocity or force with which the two vehicles came together."  While the parties may have "toed the line" on this ruling, the Court does not find that the line was crossed or that the jury received improper argument warranting a new trial.

13.   The Court concludes that the trial evidence and all reasonable inferences that may be drawn therefrom justified the jury's verdict; thus, McAllister's Motion for Judgment as a Matter of Law (or Judgment Notwithstanding the Verdict) is **DENIED**.  And, the Court, as it must, affords the jury's verdict enormous deference and finds no basis for a new trial; thus, McAllister's Motion for a New Trial is **DENIED**.

**IT IS SO ORDERED.**

_____

---

[36] *Id.* at 40, n.3 (quoting *Mazda Motor Corp. v. Lindahl*, 706 A.2d 526, 533 (Del. 1998).