IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOHN COLLINS, | § | |
| | § | No. 27, 2024 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | Cr. I.D. Nos. 2111014293 |
| Plaintiff Below, | § | 2111014214 |
| Appellee. | § | |

Submitted: October 23, 2024
Decided: January 13, 2025

Before **SEITZ**, Chief Justice; **VALIHURA** and **LEGROW**, Justices.

## **O R D E R**

This 13th day of January 2025, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)     Defendant-Below, Appellant John Collins was indicted for Reckless Endangering First Degree, Assault First Degree, five counts of Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF"), three counts of Attempted Murder First Degree, three counts of felony Criminal Mischief, Resisting Arrest, Receiving Stolen Property, Criminal Trespass Second Degree, and Attempted Misdemeanor Theft.  The State dismissed the reckless endangering

charge before trial, and the remaining sixteen counts were tried to a jury in December 2022.

(2) At the conclusion of the five-day trial, the jury found Collins guilty of Assault Second Degree (as a lesser-included offense of Assault First Degree), five counts of PDWDCF, three counts of Attempted Assault First Degree (as lesser-included offenses of Attempted Murder First Degree), three counts of felony Criminal Mischief, Resisting Arrest, Receiving Stolen Property, and Attempted Misdemeanor Theft. The Superior Court sentenced Collins to sixteen years and nine months of unsuspended Level V time followed by probation.

(3) On appeal, Collins argues that the Superior Court abused its discretion by (i) precluding him from arguing during closing that evidence of his voluntary intoxication created a reasonable doubt as to the intentionality of his conduct, and (ii) failing to include the full statutory definition of "recklessly" in its charge to the jury. We disagree and affirm Collins' convictions.

(4) In the early hours of November 29, 2021, Delaware State Police responded to a report of a vehicle theft from Hertrich Collision Center ("Hertrich"). On that morning, Michael Wyatt, a Hertrich employee, received a security alert of an alarm activated on the premises. Wyatt accessed the surveillance footage on his phone and observed a man, later identified as John Collins, rolling underneath the fence of Hertrich's property from the vicinity of a parked tow truck. Collins

2

appeared to be searching through and removing objects from vehicles and removing mail from Hertrich's mailbox.

(5)     Wyatt contacted the police, and Corporal Derek Balaguer responded to the scene, where he spotted the tail lights of what appeared to be a "big truck" driving away from Hertrich. Balaguer relayed that information over his police radio and proceeded down Buckley Boulevard to find the vehicle. Balaguer located the tow truck as it was making a U-turn, and he attempted to stop Collins by parking his police vehicle so that it was facing the truck head-on. When he realized that the truck was not going to stop, Balaguer exited his car, drew his firearm, and ordered Collins to exit the vehicle. Collins did not comply and instead reversed the truck before driving toward Balaguer. Balaguer jumped back into his squad car, and Collins proceeded to drive directly into the vehicle. The collision caused the police vehicle's airbags to deploy.[1] Balaguer reported the collision by radio.

(6)     Corporal Zachary Drake and other officers then arrived at the scene and saw Collins driving the tow truck towards them at a high rate of speed. Drake and the other officers drove out of the tow truck's path, and Drake followed the truck up Brandywine Drive and out to Pulaski Highway. Collins drove west on Route 40 before cutting across the oncoming lanes of traffic. Drake testified that he was

---

[1] Corporal Balaguer felt the airbags hit him in the face, felt pain in his left hip, and experienced a massive headache.

driving approximately seventy miles per hour as he pursued Collins, but he was unable to catch up. Collins then made a left turn from the far-right lane into a shopping center, hitting the curb and median with such force that the tow truck was lifted into the air.

(8) Trooper Heather Swain and Corporal Sean Rodrigues pursued Collins westbound through the shopping center while Drake positioned his vehicle behind them. Collins then exited the shopping center—cutting across multiple lanes of Route 40 and a grassy median—to turn left onto the westbound side of the highway. Collins crossed several lanes of westbound traffic and crossed the median again before proceeding in the wrong direction down Route 40. As he crossed the median, Collins sideswiped a vehicle operated by Corporal Rosendo Luna.[2]

(9) After the collision with Luna, Collins continued to drive westbound in the eastbound lanes with Rodrigues and Swain in pursuit. Numerous vehicles had to swerve out of Collins' path as he weaved between lanes trying to avoid police. Drake testified that if he had seen a vehicle being driven in that manner, and all the other events had not happened, he would have suspected that Collins was under the influence of drugs or alcohol.

---

[2] As a result of the collision, Luna suffered a minor abrasion near his left thumb, and his vehicle was completely disabled.

(10) Collins then turned left into a small shopping center and brought the tow truck to a stop. Swain and Rodrigues stopped their vehicle about twenty feet from the tow truck and opened their doors. Rodrigues exited the vehicle and ran toward the truck, but Collins began to reverse at a high rate of speed, striking the police vehicle, disabling it, and injuring Swain.[3] Rodrigues fired his weapon towards Collins, believing that Collins intended to kill or seriously injure Swain. Collins then pulled away through the shopping center and back toward Route 40.

(11) Collins drove over the median again and crashed into a pole, disabling the tow truck. Rodrigues moved around the front of the tow truck and saw Collins running in the distance. Corporal Alexander Ricketts and a New Castle County police officer finally apprehended Collins after a foot chase. Police found a hypodermic syringe in Collins' possession when they searched him upon his arrest. Detective Mark Csapo of the Delaware State Police testified that possession of a syringe would raise concern that the individual "could be a diabetic and/or they could be a drug addict."[4]

(12) Before closing arguments, Collins' counsel sought permission to argue to the jury that the State had not shown beyond a reasonable doubt that Collins was not intoxicated, and the possibility that he was intoxicated could mean that Collins

---

[3] Swain, attempting to exit the vehicle, was thrown approximately six feet, bruising her left leg and shin.

[4] App. to Opening Br. at A389.

did not understand the severity of his actions.[5] The Superior Court denied that request and denied Collins' related request to include within the jury instructions the reference to voluntary intoxication that appears in the statutory definition of a "reckless" state of mind. Collins now appeals both of those rulings, arguing that the Superior Court abused its discretion by (i) precluding the defense from arguing that there was reasonable doubt as to the intentionality of Collins' conduct due to the possibility that he was acting recklessly as a result of voluntary intoxication, and (ii) excluding a reference to voluntary intoxication from the jury instructions.

(13) This Court reviews the Superior Court's determination of the proper bounds of closing arguments for abuse of discretion.[6] In addition, this Court reviews the record to determine whether competent evidence supports the Superior Court's findings of fact and whether its conclusions of law are not erroneous.[7] Questions of law are reviewed *de novo*.[8]

(14) Collins first argues that the Superior Court abused its discretion by prohibiting him from arguing during closing that the jury should infer that he was intoxicated during the car chase and that his intoxication created reasonable doubt as to his state of mind. He contends that sufficient evidence existed in the record

---

[5] App. to Opening Br. at A582–83.
[6] *Crosby v. State*, 108 A.3d 291, 292 (Del. 2015).
[7] *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).
[8] *Id.* at 1190; *Outten v. State*, 720 A.2d 547, 551 (Del. 1998).

from which the jury could reasonably infer that he was intoxicated when he committed the crimes in question. That inference, Collins contends, would support his argument that "his conduct could have been the reckless byproduct of his intoxication," rather than the result of an intentional state of mind.

(15) Collins' argument regarding the permissible scope of closing argument fails for two independent reasons. First, the trial court correctly concluded that there was not sufficient evidence from which Collins could urge the jury to infer that he was intoxicated. Second, even if sufficient evidence existed to support such an inference, voluntary intoxication is not a defense to any criminal act and cannot be used to negate specific intent, making Collins' argument legally impermissible.[9]

(16) The Superior Court limited the scope of closing argument based on the court's conclusion that the record did not contain sufficient evidence that Collins was intoxicated. Collins' argument to the contrary rests on testimony elicited during cross examination that officers thought he was driving erratically, along with the testimony that a syringe was found on his person at the time of his arrest. The State responds that Collins was driving erratically to escape arrest, not because he was intoxicated, and no evidence showed that he had used drugs via syringe or any other method.

---

[9] *See* 11 *Del. C.* § 421 (stating that voluntary intoxication is not a defense to any crime).

(17) Counsel may argue all reasonable inferences from the evidence in the record.[10] A trial judge, however, has the discretion to restrict arguments that do not have a rational basis in the evidentiary record.[11] The trial court correctly held that there was no rational basis in the record from which Collins' counsel could ask the jury to infer that he was intoxicated.

(18) The trial testimony about Collins' erratic driving attributed it only to his attempts to evade police, and the syringe found in his possession was not connected by any testimony or any other evidence to Collins' actual use of drugs. Drake's statement regarding suspicion of intoxication, taken in context, was a response to the defense's hypothetical question: "[i]f you had seen somebody driving in that manner *and all the other things hadn't happened*, would you have pulled that vehicle over?" In a hypothetical situation where none of the other events of this case took place, it would certainly be reasonable for a police officer to suspect that the operator of a tow truck driving into oncoming traffic, crossing the median, and swerving across multiple lanes was under the influence of drugs or alcohol. But this hypothetical is not evidence of Collins' actual state. Collins was driving in the stated manner amidst a police chase and "all the other things" *did* occur. The Superior Court therefore did not abuse its discretion in determining that Drake's testimony

---

[10] *State v. Bennefield*, 567 A.2d 863, 867 (Del. 1989).
[11] *Crosby*, 108 A.3d at 292.

8

and the presence of a syringe were not sufficient to warrant closing arguments or jury instructions on voluntary intoxication.

(19)   More critically, however, any argument that Collins was voluntarily intoxicated would have been legally impermissible and therefore was properly excluded on that basis as well.  As Collins concedes, "[i]t is well-established in Delaware that voluntary intoxication is not a defense to a criminal charge."[12] Delaware law is clear on this point and prohibited Collins from arguing that he could not have formed—or did not form—the required intent based on voluntary intoxication.[13]

(20)   For example, in *Davis v. State*, this Court analyzed a jury charge used in *State v. Gist*, which stated, in relevant part:

> If the evidence in the case leaves the jury with a reasonable doubt whether, because of the degree of his intoxication, the accused was capable of forming, *or did form*, the intent to cause death, the jury should acquit the accused of murder in the first degree.[14]

(21)   The Court concluded that its previous decision in *Wyant v. State* made the jury instruction in *Gist* legally erroneous.[15]  Under *Davis* and *Wyant*, a jury is not

---

[12] *See Red Dog v. State*, 616 A.2d 298 (Del. 1992); *Wilson v. State*, 534 A.2d 657, 1987 WL 4690 (Del. Supr. Nov. 6, 1987) (TABLE); *State v. Censurato*, 1995 WL 717618 (Del. Super. Dec. 1, 1995)).

[13] *See, e.g.*, 11 *Del. C.* § 421 (stating that voluntary intoxication is not a defense to any crime); *Davis v. State*, 522 A.2d 342, 343 (Del. 1987); *Wyant v. State*, 519 A.2d 649, 657 (Del. 1986).

[14] *Davis*, 522 A.2d at 345 (emphasis added).

[15] *Id.* (citing *Wyant*, 519 A.2d at 654–58 (finding that the Superior Court correctly barred the defendant from introducing any testimony for the purpose of establishing that he, by reason of being voluntarily intoxicated, lacked the intent to commit kidnapping, rape or robbery)).

9

permitted to use evidence of voluntary intoxication to find reasonable doubt as to whether a defendant formed the required intent to commit a charged crime.[16]

(22) Collins attempts to avoid this settled law by arguing that "evidence of intoxication is admissible not to persuade the jury that he was incapable of forming a specific *mens rea*, but rather to raise a reasonable doubt that he was, in fact, acting intentionally."[17] That argument draws a distinction without a difference. Under 11 *Del. C.* § 421, voluntary intoxication is not a defense and does not negate specific intent.[18] The State bears the burden of proving intent beyond a reasonable doubt, but "the trier of fact is simply precluded from using [a] defendant's intoxication as a basis for finding [the] defendant [] lack[ed] the requisite intent for conviction of [an] offense."[19] Consequently, the court properly prohibited Collins from arguing that he acted recklessly, not intentionally, on the basis that his voluntary intoxication created a reasonable doubt as to his intentionality.

(23) To summarize, voluntary intoxication is not a defense to any criminal act and cannot be used to negate specific intent under 11 *Del. C.* § 421.[20] The evidence of Collins' intoxication was both factually insufficient and legally inadmissible. Therefore, the court did not abuse its discretion by prohibiting Collins

---

[16] *Id.*
[17] Appellant's Reply Br. at 2.
[18] 11 *Del. C.* § 421.
[19] *Wyant*, 519 A.2d at 652.
[20] *See* 11 *Del. C.* § 421; *see also Wyant*, 519 A.2d at 658.

from discussing during closing any evidence of his possible intoxication for the purpose of establishing that his conduct could have been the reckless byproduct of intoxication, rather than an intentional state of mind.

(24) As an extension of his assertion that he should have been able to argue voluntary intoxication at closing, Collins also contends that the Superior Court erred by omitting the last sentence of the statutory definition of "recklessly" in the jury instructions, which "served to hobble [his] ability to present a defense." As set forth above, Collins' proffered defense was not legally available, and the argument fails on that basis alone. In addition, the court's instruction was proper because the jury did not receive evidence of intoxication, and the additional language would not have assisted Collins' defense.

(25) Here, the Superior Court defined "recklessly" for the jury according to the language of 11 *Del. C.* § 231(e) but omitted the final sentence of the statutory definition, which pertains to voluntary intoxication. "This Court will review *de novo* a refusal to instruct on a defense theory (in any form); and it will review a refusal to give a "particular" instruction (that is, an instruction is given but not with the exact form, content or language requested) for an abuse of discretion."[21] The jury instruction for "recklessly" did not meet the exact content requested by Collins and we therefore review it for an abuse of discretion.

---

[21] *Wright v. State*, 953 A.2d 144, 148 (Del. 2008).

11

(26) The Superior Court instructed the jury, in pertinent part, as follows:

> "Recklessly" means Defendant was aware of and consciously disregarded a substantial and unjustifiable risk serious physical injury would be caused to a person as a result of Defendant's conduct. The State must demonstrate the risk was of such a nature and degree that Defendant's disregard of the risk was a gross deviation from the standard of conduct a reasonable person would observe under the same circumstances.[22]

(27) The instruction followed the language of 11 *Del. C.* § 231(e), but omitted the final sentence of the statutory definition, which states: "[a] person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication *also* acts recklessly with respect thereto."[23] Collins argues that this omitted sentence was an accurate statement of the law and the trial court erred by failing to include it in the jury instruction. We disagree.

(28) The Superior Court declined to include the final sentence relating to voluntary intoxication because there was no evidence in the record that it was relevant in this case. Although Collins argues that judicial officers must leave factual issues to the jury, "[a] decision as to the sufficiency of evidence to warrant a particular jury instruction is within the sound discretion of the trial judge."[24] As discussed above, nothing in the record provided the jury with evidence of

---

[22] The trial court provided the same definition for "recklessly" as to all relevant charges.
[23] 11 *Del. C.* § 231(e) (emphasis added).
[24] *Robinson v. State*, 676 A.2d 906, 1996 WL 69797 at *2 (Del. Jan. 29, 1996) (TABLE); *see Wright*, 953 A.2d at 147 (explaining that it is within the court's discretion to determine if a requested jury instruction is available under the facts of the case).

intoxication, and therefore the Superior Court did not abuse its discretion in determining that the evidence was not sufficient to warrant a jury instruction on voluntary intoxication.

(29) Moreover, the sentence at issue in the statutory definition of "recklessly" is not intended to negate an intentional *mens rea*, but rather to emphasize to the jury that a defendant cannot avoid liability for acting recklessly by arguing that he was unaware of a risk solely because he was intoxicated.[25] The appellant in *Davis* similarly urged this Court to construe the definition of "recklessly" to reduce what would have been an intentional act to a reckless one based on voluntary intoxication, but this Court rejected that argument under 11 *Del. C.* § 421.[26]

(30) The court's instruction to the jury on the meaning of "recklessly" was a correct statement of the law relevant to this case. The omission of the final sentence related to voluntary intoxication did not hinder the jury's ability to intelligently perform its duty in returning a verdict, nor did it hinder Collins' ability to present a proper defense, as voluntary intoxication is not a defense to any crime. Accordingly, the Superior Court did not abuse its discretion.

---

[25] *See Wyant*, 519 A.2d at 657 (explaining that the legislative intent of Section 421 was to extend the "no defense" of voluntary intoxication for reckless conduct crimes or general intent crimes to all Code crimes).
[26] *Davis*, 522 A.2d at 344.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice